FILED

FEB 25 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANDREW R. GRASMICK,

        Petitioner,

v.

J.E. THOMAS,

        Respondent.

Civil No. 08-320-AC

OPINION AND ORDER

    ANDREW R. GRASMICK
    Fed. Reg. No. #20083-047
    FCI Sheridan
    P.O. Box 5000
    Sheridan, OR 97378

        Petitioner *Pro Se*

    KAREN J. IMMERGUT
    United States Attorney
    SUZANNE A. BRATIS
    Assistant United States Attorney
    1000 S.W. Third Avenue
    Suite 600
    Portland, OR 97204

        Attorneys for Respondent

1 - OPINION AND ORDER -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at FCI Sheridan, brings this habeas corpus action pursuant to 28 U.S.C. § 2241 *pro se*.[1] The parties to this action have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with 28 U.S.C. § 636(c). For the reasons set forth below, the Petition For Writ of Habeas Corpus is DENIED.

## BACKGROUND

On November 28, 2005, Petitioner pleaded guilty in the United States District Court for the District of Nebraska to one count of Unlawful Transport of Firearms, Etc., in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The District Judge sentenced Petitioner to 88 months of imprisonment, which Petitioner was designated to serve at FCI Sheridan.

Upon his arrival at FCI Sheridan on June 7, 2006, Petitioner participated in completing a Federal Bureau of Prisons ("BOP") Intake Screening Form. When asked "are you a member/associate of any gang," Petitioner replied "no." Petitioner also denied knowing any reason he should not be placed in general population.

On June 6, 2007, FCI Sheridan officials "randomly" assigned an African-American cell-mate to triple-bunk with Petitioner. Although the parties refer throughout this action to BOP's practice of "random" cell assignments, this is somewhat of a misnomer. In fact, the BOP takes into consideration factors such as risk to inmate safety, including medical and social history, as well as

---

[1] The court appointed the Federal Public Defender to represent Petitioner on March 19, 2008. On September 5, 2008, the court granted attorney Alison M. Clark's request to withdraw from further representation of Petitioner. Ms. Clark's representation of Petitioner is this subject of a motion for sanctions filed by Petitioner, which is addressed in a separate Order of this date.

2 - OPINION AND ORDER -

gang affiliation in assigning cell-mates. 28 C.F.R. § 522.21. In the absence of these factors, however, the BOP does not take inmate race into consideration. *See* 28 C.F.R. § 551.90.

Petitioner alleges the June 6 cell assignment occurred despite documentation in his file that is a member of the "European Kindred," and a white separatist. When Petitioner and his cell-mates asked their counselor to change the assignment, she refused. The next day, the counselor changed the cell assignments, but assigned another African-American inmate to Petitioner's cell. On June 9, 2007, a different FCI Sheridan official changed the cell assignments so Petitioner was no longer housed with an African-American inmate. Petitioner does not allege any conflict occurred with the two African-American inmates. He claims, however, that as a result of the cell assignments he was "ostracized by [his] own race and threatened."

On August 27, 2007, Petitioner completed a "Gang Affiliation Questionnaire." Petitioner claimed he had never been affiliated with any gang or any white movement organization. When questioned about a tattoo on his right leg of the letters "EK" inside a shield, Petitioner stated he did not know it was gang-related when he got the tattoo, but instead thought it was related to his "Odinist" beliefs.

On March 14, 2008, after exhausting BOP administrative remedies, Petitioner filed his Petition for Writ of Habeas Corpus in this court. Petitioner alleges Respondent violated his Eighth Amendment right to be free from cruel and unusual punishment by randomly assigning inmates to double- and triple-bunk without consideration of factors such as race. Petitioner argues that unless an inmate claims a gang affiliation, the inmate has "no right to his cultural, racial, or religious beliefs." Although no due process claim is alleged in the Petition for Writ of Habeas Corpus, in

3 - OPINION AND ORDER -

his *pro se* Memorandum in Support of his Petition, Petition argues the BOP practice of randomly assigning cell-mates also violates his due process rights.

Respondent moves to dismiss the Petition for Writ of Habeas Corpus. Respondent contends the subject of Petitioner's complaint is not appropriately before this court in a § 2241 habeas corpus action because it should have been brought as a civil rights action under *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). Respondent further argues that, in any event, Petitioner is not entitled to relief on the merits of his claim.

## DISCUSSION

### I.     Habeas Corpus v. *Bivens*

Respondent moves to dismiss on the basis that Petitioner fails to state a claim upon which relief may be granted under 28 U.S.C. § 2241. Instead, Respondent argues Petitioner's claims are more appropriately brought in a civil rights action under *Bivens*. As Respondent acknowledges, however, some ambiguity exists as to whether an inmate may use § 2241 to bring a challenge which does not directly relate to the fact or duration of confinement.

Certainly, a review of the past case law in this Circuit suggests the preferred practice is that challenges to conditions of confinement be brought in a civil rights complaint. *Cleveland v. Daniels*, 2005 WL 19443 *1 (D.Or. Jan. 4, 2005) (citing *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991); *Crawford v. Bell*, 599 F.2d 890, 891-92 & n.1 (9th Cir. 1979)). Neither the Ninth Circuit nor the Supreme Court have, however, specifically addressed whether a challenge to a condition of confinement by a federal prisoner may be brought via habeas corpus under 28 U.S.C. § 2241. Indeed, two Supreme Court cases indicate that the "preferred practice" is <u>not</u> mandatory, and

4 - OPINION AND ORDER -

explicitly left open the option of pursuing conditions of confinement claims in habeas corpus proceedings. *See Muhammad v. Close*, 540 U.S. 749 (2004); *Nelson v. Campbell*, 541 U.S. 637 (2004).

Although the law in this Circuit is unsettled on this point, the availability of habeas corpus relief for the type of claim alleged by Petitioner will be assumed for the limited purpose of resolving this case on the merits.

## II.   Relief on the Merits

### A.   Eighth Amendment

Prison officials have a duty to "take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray*, 682 F.2d 1237, 1250-51 (9th Cir. 1982); *see also Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, a prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834. To establish that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that the official knew of and disregarded an "excessive risk" to inmate safety; the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference." *Farmer*, 511 U.S. at 837.

The very obviousness of the risk may suffice to establish the knowledge element. *See Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. *See Farmer*, 511 U.S. at 844. The knowledge element does not require that the prisoner prove that prison officials know for a

5 - OPINION AND ORDER -

certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. *See Berg v. Kincheloe,* 794 F.2d 457, 459 (9th Cir. 1986). Finally, the prisoner must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. *See Farmer*, 511 U.S. at 844.

Here, Petitioner does not present evidence to support a finding that prison officials knew random cell assignments would put him at risk of harm or that they disregarded an excessive risk to his safety. Petitioner did not report his gang affiliation at intake and did not report any threat to his safety. Moreover, Petitioner suffered no injury as a result of the cell assignments, which lasted a total of three days, as prison officials did ultimately accede to Petitioner's request to change cellmates. Accordingly, Petitioner cannot prevail on his claim that prison officials violated his Eight Amendment rights.

### B. Due Process

As noted above, although he did not allege a due process violation in his Petition, Petitioner now argues the random cell assignment procedure which did not take into account Petitioner's racist beliefs also violated Petitioner's right to due process.

Liberty interests which entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). When deciding whether the

Constitution protects an alleged liberty interest of a prisoner, the court should consider whether the practice in question "is within the normal limits or range of custody which the conviction has authorized the state to impose." *Meachum v. Fano,* 427 U.S. 215, 225 (1976).

Only a hardship that is sufficiently significant will require due process protections. *Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003), *cert. denied,* 541 U.S. 1063 (2004). Three factors to consider are: (1) the conditions of confinement; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the sanction will affect the duration of the prisoner's sentence. *Id* at 861; *Keenan v. Hall,* 83 F.3d 1083, 1088-89 (9th Cir. 1996).

Here, assignment of an African-American cell-mate over a three-day period of time does not rise to the level of an atypical and significant hardship on Petitioner. As such, Petitioner cannot prevail on a due process claim.

### C.    *Johnson v. California*

Finally, to the extent Petitioner relies upon the Supreme Court's decision in *Johnson v. California,* 543 U.S. 499 (2004) to support his claim that random cell assignments violate his constitutional rights, his reliance is misplaced. In *Johnson*, the Supreme Court held a California Department of Corrections policy of racially segregating prisoners in double cells in reception centers for up to 60 days each time they enter a new correctional facility was subject to a strict scrutiny standard of review. *Id.* at 515. The Court did not invalidate the use of random cell assignments or dictate the consideration of race or any other factor. Because no other Supreme

Court or Ninth Circuit precedent invalidates random cell assignment of the type employed by BOP officials at FCI Sheridan, Petitioner's argument is without merit.[2]

## CONCLUSION

For these reasons, IT IS ORDERED that the Petition for Writ of Habeas Corpus is DENIED, and this action is DISMISSED.

IT IS SO ORDERED.

DATED this 25th day of February, 2009.

John V. Acosta
United States Magistrate Judge

---

[2]Indeed, use of race as a factor in assigning cell-mates remains a questionable practice. *See Mayweathers v. Hickman*, 2008 WL 4206822 *4 (S.D. Cal. May 16, 2008) (noting that although it is well established that laws requiring segregation in prison violate the Fourteenth Amendment, the contours of a prisoner's protection under the Equal Protection Clause from having their race used as one of many factors in cell assignments remains unclear.